JOHN R. LUND (4368)
LEVI J. CLEGG (11543)
SNOW, CHRISTENSEN & MARTINEAU
10 Exchange Place, Eleventh Floor
Post Office Box 45000
Salt Lake City, Utah 84145
Telephone:  (801) 521-9000
Facsimile:   (801) 363-0400

STEPHEN E. YOCH (*pro hac vice*)
MARNIE FEARON (*pro hac vice*)
RICHARD VOELBEL (*pro hac vice admission pending*)
FELHABER, LARSON, FENLON & VOGT
444 Cedar Street, Suite 2100
St. Paul, MN 55101-2136
Telephone:   (651) 222-6321

***Attorneys for Plaintiff***

---

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

---

| | |
|---|---|
| MP NEXLEVEL, LLC, a Minnesota Limited liability company, | |
| Plaintiff, | |
| vs. | **AMENDED COMPLAINT** |
| CODALE ELECTRIC SUPPLY, INC., a Utah Corporation, YUCCA TELECOMMUNICATIONS SYSTEMS, INC., a New Mexico corporation, FURUKAWA ELECTRIC NORTH AMERICA, INC., a Delaware Corporation, and SUPERIOR ESSEX, INC.,  a Delaware Corporation, | Civil No. 08-CV-00727  Judge Tena Campbell |
| Defendants. | |

---

Plaintiff MP Nexlevel, LLC, a Minnesota limited liability company ("MP Nexlevel"), alleges and complains against Defendants Codale Electric Supply, Inc., a. Utah corporation ("Codale"), Yucca Telecommunications Systems, Inc., a New Mexico corporation ("Yucca"), Furukawa Electric North America, Inc., d/b/a OFS ("OFS"), a Delaware Corporation, and Superior Essex, Inc. ("Superior"), a Delaware Corporation, (collectively "Defendants") as follows:

<u>**PARTIES**</u>

1.      MP Nexlevel, LLC is a Minnesota limited liability company with a registered address of 500 County Road 37 E., Maple Lake, Minnesota 55358, and its principal place of business in Minnesota.  MP Nexlevel is in the business of installing underground cable of all types throughout the Midwestern and Southwest states.   MP Nexlevel is, and at all times pertinent to this litigation, was a duly licensed New Mexico contractor.

2.      Codale Electric Supply, Inc. is a Utah corporation located at 3150 S 900 W, Salt Lake City, Utah 84119, with its principal place of business in Utah.  Codale supplied the cable at issue in this lawsuit.

3.      Yucca Telecommunications Systems, Inc. is a New Mexico corporation with a principal address of 201 W 2nd Street, P.O. Box 867, Portales, New Mexico 88130, and its principal place of business in New Mexico.  Yucca is the owner of the project at issue in this lawsuit.

4.      Upon information and belief, Defendant Furukawa Electric North America, Inc., d/b/a OFS ("OFS"), is a Delaware Corporation with a principal address of 2000 Northeast Expressway, Norcross, Georgia 30071, and its principal place of business in the State of Georgia.

OFS is the manufacturer of the glass which was incorporated into the subject goods of this action.

5.     Upon information and belief, Defendant Superior Essex, Inc. ("Superior") is a Delaware Corporation with a principal address of 150 Interstate North Parkway, Atlanta, GA 30339, and its principal place of business in the State of Georgia.  Superior is the manufacturer of the subject goods of this action.

## JURISDICTION AND VENUE

6.     The Court has jurisdiction over the parties in this lawsuit pursuant to 28 U.S.C. 1332(a)(I) and (c)(l) because MP Nexlevel and Defendants are citizens of different states and because the amount in controversy exceeds $100,000 excluding interest and costs.   No Defendant is a citizen of Minnesota.

7.     Codale has transacted business within New Mexico, committed tortious acts within New Mexico, and is subject to personal jurisdiction pursuant to NMRA 2007,  § 38-1-16 and the Constitution of the United States.  Yucca is a New Mexico corporation and is subject to the Court's jurisdiction.  Superior and OFS supplied cable and/or its component parts installed as an improvement to real property in New Mexico, the original venue of the above-captioned action.  Upon information and belief, Superior and OFS transact business and/or contracted to supply goods within Utah and is subject to personal jurisdiction pursuant to Utah Code Ann. § 78B-3-205 and the Constitution of the United States.

8.     Venue in this district is proper under 28 U.S.C. 1391(a)(2) because a substantial part of the events or omissions giving rise to these claims occurred in New Mexico, and

Defendant Yucca resides in New Mexico. Venue in this district is proper under 28 U.S.C. 1391(a) and (c) because OFS and Superior reside in Utah.

**GENERAL ALLEGATIONS**

9.      On or about May 27, 2005, Yucca issued a request for proposal for an "overlay" project to install fiber optic cabling in Portales, New Mexico ("Project"). The purpose of the project was to enable Yucca to provide competitive telecommunications, internet, and cable services.

10.     The Project included the placement of approximately 68.97 route miles of mainline cable with 12.67 miles of drop in Portales, New Mexico. The cable ranged from 12-fiber up to 288-fiber. The specifications required cable with Corning brand glass. MP Nexlevel submitted a bid and was ultimately awarded the Project. Yucca and MP Nexlevel entered into a Telecommunications System Construction Contract ("Agreement") dated August 31, 2005.

11.     On August 29, 2005, Codale provided a quotation to MP Nexlevel for the provision of the fiber optic cable and related supplies required for the Project. The quotation specified Superior Fiber "Corning" GLS cable as required by Yucca. For the 12-fiber cable, Codale quoted a unit price of $0.216.

12.     Prior to purchasing fiber optic cable from Codale, MP Nexlevel received Superior's product brochures representing the quality of cable that Codale would provide.

13.     On September 30, 2005, Codale submitted a second bid to MP Nexlevel. Again, the bid specified "Corning" glass as required by Yucca and included a part number, 120129T01. That same day, MP Nexlevel provided a Purchase Order to Codale. The Purchase Order

4

requested fiber optic cable with "Corning Glass as Spec'd." The Purchase Order listed the part number and unit price quoted by Codale.

14.     On October 3, 2005, and periodically thereafter, MP Nexlevel received invoices from Codale. The invoices referenced MP Nexlevel's Purchase Order number and included the part number and unit price contained in Codale's bids and the Purchase Order.

15.     In January of 2006, MP Nexlevel started work on the Project. By the summer of 2006 when splicing commenced, MP Nexlevel began experiencing problems with effective splicing of the cable.

16.     On or about September 25, 2006, MP Nexlevel discovered that although the fiber optic cable supplied by Codale was manufactured by Superior, it contained OFS glass as opposed to the Corning glass specified in the contract and quoted by Codale. The OFS glass is of inferior quality and is less expensive than the Corning glass. Nevertheless, Codale substituted the OFS glass for the Corning glass and charged MP Nexlevel the price quoted for the Corning glass.

17.     Thereafter, testing was performed on the cable and it was determined that there were significant problems with the cable, which was causing the splicing problems.

18.     Yucca notified MP Nexlevel that the cable provided was defective. Thereafter, MP Nexlevel notified Codale that Yucca would not accept the manufactured OFS cable for the Project, as it was both the wrong brand and defective. Yucca demanded that MP Nexlevel remove the OFS cable and replace it with the Corning cable specified in the contract. MP Nexlevel agreed to do so resulting in significant cost to MP Nexlevel and over a twelve-month delay in the completion of the Project.

19.     At no time prior to the installation of the cable did MP Nexlevel have knowledge of the aforementioned cable substitution.  Upon information and belief, Will Prince, a former Yucca employee, was in discussions with Codale and verbally agreed on Yucca's behalf to the substitution of OFS cable for Corning cable.  MP Nexlevel, who contracted to purchase Corning cable from Codale, did not authorize the change and was not aware of the change.  Codale charged MP Nexlevel the price contracted for Corning cable despite substituting the OFS brand cable.

20.     Yucca notified MP Nexlevel that beginning January 18, 2007, it claimed MP Nexlevel was responsible for damages for delay in completion of the Project.  Yucca did not revise the completion date as a result of the substituted cable.  Furthermore, Yucca has failed and/or refused to pay MP Nexlevel the full contract price.  Indeed, the original contract with Yucca contemplated $7.5 million in billings.  Yucca only ordered $6.6 million.

21.     OFS is in the business of manufacturing glass that is used in fiber optic cable, such as the subject cable of this action.

22.     Superior is in the business of manufacturing fiber optic cable, such as the subject cable.

23.     OFS is the manufacturer of the glass that was incorporated into the subject cable.

24.     Upon information and belief, said glass was defectively manufactured by OFS and was not merchantable.

25.     Superior is the manufacturer of the subject cable.

26.     Upon information and belief, the subject cable was defectively manufactured by Superior and was not merchantable.

27.     At the time of delivery to Codale, the subject cable was not free from material defects in workmanship and materials under normal use did not conform to contract specifications.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT - CODALE

28.     MP Nexlevel restates and re-alleges the preceding paragraphs as though fully set forth herein.

29.     Pursuant to one or more valid and binding contracts between MP Nexlevel and Codale, Codale agreed to provide fiber optic cable manufactured with Corning glass.

30.     MP Nexlevel paid Codale for fiber optic cable manufactured with Corning glass. Codale failed and/or refused to provide fiber optic cable in accordance with the parties' agreement.

31.     Codale's failure to provide fiber optic cable manufactured with Corning glass constitutes a breach of the agreement or agreements between MP Nexlevel and Codale.

32.     In addition, Codale's failure to provide cable free of defects constitutes a breach of the agreement or agreements between MP Nexlevel and Codale.

33.     Codale's breach of the parties' contracts was malicious, reckless, wanton, oppressive, and/or fraudulent, entitling MP Nexlevel to punitive damages.

34.     As a direct and proximate result of Codale's breach of contract, MP Nexlevel has been damaged in an amount in excess of $100,000.00, the exact amount to be proven at trial.

## SECOND CAUSE OF ACTION
### FRAUD - CODALE

35.    MP Nexlevel restates and re-alleges the preceding paragraphs as though fully set forth herein.

36.    On or about August 29, 2005 and September 30, 2005, Codale represented to MP Nexlevel that it would provide fiber optic cable to the Project manufactured with Corning glass. Between October 3, 2005 and September of 2006, Codale supplied fiber optic cable to the Project that it represented was manufactured with Corning glass.  Those representations were untrue, because Codale did not supply fiber optic cable made with Corning glass, but rather supplied fiber optic cable made with OFS glass.  Upon information and belief, Codale knew that it was not supplying fiber optic cable made with Corning glass.

37.    The representation that Codale would, and was, supplying fiber optic cable made with Corning glass was made with the intent to induce MP Nexlevel to rely on the representation, and to deceive MP Nexlevel.

38.    MP Nexlevel did, in fact, rely on Codale's misrepresentation as to the type of glass with which the fiber optic cable was manufactured, to its detriment.  MP Nexlevel installed the fiber optic cable which was represented by Codale to be manufactured with Corning glass, believing Codale's representation.

39.    As a direct and proximate result of Codale's fraudulent misrepresentation, MP Nexlevel has been damaged, in an amount in excess of $100,000, the exact amount to be proven at the trial of this matter.

40.    Codale's conduct, as set forth in the Complaint, was malicious, reckless, wanton, oppressive, and/or fraudulent, entitling MP Nexlevel to punitive damages.

**THIRD CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION - CODALE**
**(ALTERNATE TO SECOND CAUSE OF ACTION)**

41.    MP Nexlevel restates and re-alleges the preceding paragraphs as through fully set forth herein.

42.    Codale represented to MP Nexlevel that it was supplying fiber optic cable made with Corning glass for the Project.  That representation turned out to be untrue.  Codale intended MP Nexlevel to rely on the representation that it was supplying fiber optic cable made with Corning glass, and MP Nexlevel did rely on that representation to its detriment.  Codale had no reasonable ground for believing that the representation that the fiber optic cable it was supplying was manufactured by Corning glass.

43.    As a result of Codale's negligent misrepresentation, MP Nexlevel has been actually and proximately damaged in an amount exceeding $100,000, the exact amount to be proved at trial.

**FOURTH CAUSE OF ACTION**
**UNJUST ENRICHMENT - CODALE**

44.    MP Nexlevel restates and re-alleges the preceding paragraphs as though fully set forth herein.

45.    Pursuant to its agreement or agreements with Codale, MP Nexlevel paid for fiber optic cable manufactured with Corning glass and was, instead, provided cable with glass of an inferior quality.

46.    Codale will remain unjustly enriched if it is allowed to retain the amounts paid by MP Nexlevel without providing cable in accordance with the parties' agreement, and MP Nexlevel will suffer damages in excess of $100,000.00, the exact amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### BREACH OF WARRANTY OF MERCHANTABILITY - CODALE

47.     MP Nexlevel restates and re-alleges the preceding paragraphs as though fully set forth herein.

48.     Codale warranted that the cable supplied would pass without objection in the trade under the contract description.

49.     Codale supplied nonconforming goods in breach of that warranty in that Codale provided OFS Cable and that cable was defective.

50.     As a direct and proximate result of Codale's breach of warranty of merchantability, MP Nexlevel has suffered damages in excess of $100,000, the exact amount to be proven at trial.

## SIXTH CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY - CODALE

51.     MP Nexlevel restates and re-alleges the preceding paragraphs as though fully set forth herein.

52.     Codale warranted that the cable supplied would contain Corning brand glass.

53.     Codale supplied nonconforming goods in breach of that warranty in that Codale provided OFS Cable.

54.     As a direct and proximate result of Codale's breach of warranty, MP Nexlevel has suffered damages in excess of $100,000, the exact amount to be proven at trial.

## SEVENTH CAUSE OF ACTION
### BREACH OF THE COVENANT OF
### GOOD FAITH AND FAIR DEALING -CODALE

55.     MP Nexlevel restates and re-alleges the preceding paragraphs as though fully set forth herein.

56.     Pursuant to one or more contracts between MP Nexlevel and Codale, Codale agreed to provide fiber optic cable manufactured with Corning glass.

57.     MP Nexlevel paid Codale for fiber optic cable manufactured with Corning glass. Codale intentionally and knowingly failed and/or refused to provide fiber optic cable in accordance with the parties' agreement.

58.     Codale's intentional failure to provide fiber optic cable manufactured with Corning glass constitutes a breach of the covenant of good faith and fair dealing of the agreement or agreements between MP Nexlevel and Codale.

59.     As a direct and proximate result of Codale's breach of the covenant of good faith and fair dealing, MP Nexlevel has been damaged in an amount in excess of $1 00,000.00, the exact amount to be proven at trial.

60.     MP Nexlevel is entitled to punitive damages as a result of Codale's breach of covenant of good faith and fair dealing.

**EIGHTH CAUSE OF ACTIONS**
**BREACH OF CONTRACT - YUCCA**

61.     MP Nexlevel restates and re-alleges the preceding paragraphs as though fully set forth herein.

62.     MP Nexlevel and Yucca entered into a valid and binding contract for Yucca to pay for work performed by MP Nexlevel.

63.     Yucca initially required that fiber optic cable manufactured with Corning glass.

11

64.     Upon information and belief, Yucca verbally approved Codale substitution of fiber optic cable manufactured with OFS glass.  MP Nexlevel was not aware of and was not informed of the substitution.

65.     It was subsequently discovered that the OFS cable contributed to problems with splicing.  As a result, Yucca demanded that MP Nexlevel replace the OFS cable with Corning cable, causing MP Nexlevel to incur additional costs and causing delays to the project, including increased engineering costs.   Yucca did not inform MP Nexlevel that it approved the substitution.

66.     Yucca has failed and/or refused to pay MP Nexlevel in full for work performed pursuant to the Agreement and is in breach of its contract with MP Nexlevel.

67.     Yucca's contract provided for $7.5 million in billings, yet Yucca only ordered $6.6 million from Plaintiff.

68.     As a direct and proximate result of Yucca's material breach of contract, MP Nexlevel has suffered damages in excess of $100,000.00, the exact amount to be proven at trial.

## NINTH CAUSE OF ACTION
## EQUITABLE EXTENSION OF CONTRACT - YUCCA

69.     MP Nexlevel restates and re-alleges the preceding paragraphs as though fully set forth herein.

70.     Upon information and belief, Yucca verbally approved Codale's substitution of OFS cable for Corning cable.  The substitution of OFS cable, which ultimately had to be replaced, resulted in significant delays.

71.     Despite the fact that the delays were not the fault of MP Nexlevel, Yucca charged MP Nexlevel liquidated damages for each day completion was delayed and failed and/or refused to extend the completion date to account for the delay caused by the substituted cable.

72.     MP Nexlevel is entitled to an equitable extension of the completion date equivalent to the delay caused by the substituted cable.

## TENTH CAUSE OF ACTION
## BREACH OF WARRANTY OF MERCHANTABILITY – OFS

73.     MP Nexlevel restates and realleges the preceding paragraphs as though fully set forth herein.

74.     The glass manufactured by OFS, which was incorporated into the subject cable, was so defective that it could not pass without objection in the trade under the contract description, was not of fair average quality within the description, or was not fit for the ordinary purposes for which such goods are used, or some combination of all of the above.

75.     MP Nexlevel, as a subsequent distributee of the defective glass, is entitled to the benefits of the implied warranty of merchantability as a third-party beneficiary of the contract between OFS and Superior, by an implied assignment that runs with the subject goods, or by operation of law.

76.     As a direct and proximate result of OFS's breach of warranty, MP Nexlevel has suffered damages in excess of $100,000.00, the exact amount to be proven at trial.

## ELEVENTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY – SUPERIOR

77.     MP Nexlevel restates and realleges the preceding paragraphs as though fully set forth herein.

78.     Superior warrants that its goods will be free from material defects in workmanship and materials under normal use and will conform substantially to its applicable specifications.

79.     The subject cable was not free from material defects in workmanship and materials under normal use did not conform substantially to the applicable specifications.

80.     MP Nexlevel, as a subsequent distributee of the subject cable, is entitled to the benefits of this express warranty as a third-party beneficiary of the contract between Superior and Codale, by an implied assignment that runs with the subject goods, or by operation of law.

As a direct and proximate result of Superior's breach of warranty, MP Nexlevel has suffered damages in excess of $100,000.00, the exact amount to be proven at trial.

**WHEREFORE**, Plaintiff MP Nexlevel, LLC prays for relief as follows:

1.      for judgment against Defendants, jointly and severally, in an amount in excess of $100,000.00, the exact amount to be proven at trial;

2.      for an equitable extension of the Agreement with Yucca;

3.      for punitive damages against Codale;

4.      for the costs of this action, prejudgment interest, and reasonable attorneys fees from Defendants; and;

5.      for such other and further relief as the Court deems just and proper.

DATED this 13th day of October, 2008.

SNOW, CHRISTENSEN & MARTINEAU

By:  /s/ Levi J. Clegg
　　　John Lund
　　　Levi J. Clegg

　　　FELHABER, LARSON, FENLON & VOGT, P.A.
　　　Stephen E. Yoch, MN #213901
　　　Marnie E. Fearon, #305078
　　　Richard R. Voelbel, #0387091

　　　***Attorneys for Plaintiff***

954076-1      24437-1

15

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 13th day of October, 2008, I electronically filed the foregoing **AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system which sent notification of such filing to the following:

**Codale Electric Supply, Inc.**
*a Utah corporation*
*Represented by:*

**James E Magleby**
Magleby & Greenwood PC
170 South Main Street
Suite 350
Salt Lake City, UT 84101
(801) 359-9000
Fax: (801) 359-9011
Email: magleby@mgpclaw.com
*ATTORNEY TO BE NOTICED*

**Jason A McNeill**
Magleby & Greenwood P.C.
170 South Main Street
Suite 350
Salt Lake City, UT 84101
(801) 359-9000
Fax: (801) 359-9011
Email: mcneill@mgpclaw.com
*ATTORNEY TO BE NOTICED*

**Patricia Williams**
Wiggins, Williams & Wiggins
PO Box 1308
Albuquerque, NM 87103-1308
(505) 764-8400
Fax: (505) 764-8585
Email: pwilliams@wwwlaw.us
*ATTORNEY TO BE NOTICED*

**Yucca Telecommunications Systems, Inc.**
*a New Mexico corporation*
*Represented by:*

**David P. Gorman**
Sheehan Sheehan & Stelzner, P.A.
Post Office Box 271
40 First Plaza, N.W.
Suite 740
Albuquerque, NM 87103-0271
(Email: dpg@ssslawfirm.com
*ATTORNEY TO BE NOTICED*

**Jaime L. Dawes**
Sheehan, Sheehan & Stelzner, P.A.
P. O. Box 271
40 First Plaza, N.W.
Suite 740
Albuquerque, NM 87103-0271
Email: jd@ssslawfirm.com
*ATTORNEY TO BE NOTICED*

**Kent B. Scott**
**Justin E. Scott**
Babcock Scott & Babcock, P.C.
Washington Federal Plaza
505 East 200 South, Suite 300
Salt Lake City UT  84102
Telephone (801) 531-7000
Facsimile (801) 531-7060
Email: kent@babcockscott.com
justin@babcockscott.com
*ATTORNEY TO BE NOTICED*


    /s/ Jennifer L. Howell
Legal Assistant