IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MP NEXLEVEL, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CODALE ELECTRIC SUPPLY, INC. et al.,<br><br>Defendants. | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No. 2:08-cv0727 CW<br><br>Judge Clark Waddoups |

## INTRODUCTION

This matter is before the court on motions to dismiss by Defendants Codale Electric Supply, Inc. ("Codale") and Superior Essex, Inc. Plaintiff MP Nexlevel, LLC ("MP Nexlevel") installs underground cable throughout the Midwest and Southwest states.[1] Yucca Telecommunications Systems, Inc. ("Yucca") issued a request for proposal to install fiber optic cabling in New Mexico for a telecommunications, internet, and cable project.[2] Codale supplied the cable which was purportedly manufactured by Superior Essex, Inc. MP Nexlevel installed the underground cable. During installation, problems arose that resulted in significant costs and delays. MP Nexlevel asserts that Superior Essex, Inc. manufactured defective cable and that Codale intentionally supplied cable that did not meet the required specifications.

Codale does not deny it supplied the wrong cable. It seeks dismissal of all claims against it,

---

[1] Amended Complaint, ¶ 1 (Docket No. 19).

[2] *Id.* ¶ 9.

however, based on a contractual statute of limitations and the economic loss rule. Superior Essex, Inc. seeks dismissal claiming it is an improper party, the court lacks personal jurisdiction, and MP Nexlevel fails to state a claim against it. For the reasons discussed below, the court dismisses all claims against Codale, except fraudulent inducement, negligent misrepresentation and unjust enrichment. The court denies in part and reserves ruling in part Superior Essex, Inc.'s motion to dismiss.

## **FACTUAL BACKGROUND**

### **Project and Price Quotes**

In May 2005, Yucca issued a request for proposal to install fiber optic cabling for a telecommunications, internet, and cable project in New Mexico.[3] The project specifications required the installed cable to be made with Corning brand glass.[4] MP Nexlevel bid on and was awarded the project.[5] MP Nexlevel obtained quotes from Codale for the purchase price of fiber optic cable and related supplies MP Nexlevel needed to complete the project.

On September 22, 2005, Codale quoted a unit price of $0.216 for "Superior Fiber Corning Gls," 12-fiber cable.[6] On September 30, 2005, Codale submitted a second quote that specified it would provide "12 Fiber SJSA w/Corning Glass" from "Essex," and it listed a part number,

---

[3] *Id.*

[4] *Id.* ¶ 10.

[5] *Id.*

[6] Codale Quotation (Sept. 22, 2005) (Docket No. 53, Ex. 1, Attachment A). In the Amended Complaint MP Nexlevel asserted different dates. The court has used the dates supported by the evidence presented in connection with these motions.

120129T01.[7]  Based on this information, MP Nexlevel submitted Purchase Order 5254 to Codale.[8]

In that order, MP Nexlevel described the product it was ordering as "12 Fiber SA SJ W/Corning

Glass as Spec'd," with a part number of 120129T01, and a unit cost of $0.2158.[9]

Despite the agreed upon specifications, Codale supplied fiber optic cable made with OFS

glass.[10]  OFS glass is purportedly both inferior to Corning glass and less expensive.[11]  Codale did not

inform MP Nexlevel about the substitution, nor did it reduce the price charged or refund any money

to MP Nexlevel.[12]  As a result of the substitution, MP Nexlevel alleges that significant problems and

delays arose in the project.[13]  Additionally, MP Nexlevel asserts that the cable itself was defective,

which further compounded the problems.

**Credit Agreement**

Also relevant to this dispute is a credit agreement entered into between Codale and MP

Nexlevel.  As a standard practice, Codale requires a buyer to apply to Codale for credit before it will

---

[7]  Affidavit of Robbi Pribyl, ¶ 3 (Dec. 10, 2008) (Docket No. 53, Ex. 1); Codale Quotation (Sept. 30, 2005) (Docket No. 53, Ex. 1, Attachment A).

[8]  Purchase Order 5254 (Docket No. 53, Ex. 1, Attachment B).

[9]  *Id.*

[10]  Amended Complaint, ¶ 16 (Docket No. 19).

[11]  *Id.*

[12]  *See id.*

[13]  *Id.* ¶¶ 17–18.

supply materials to a buyer.[14]  On September 14, 2005, MP Nexlevel completed the required credit

application and submitted it to Codale.[15]  In connection with the application, MP Nexlevel signed

Codale's Credit Policy.  The Credit Policy states that it governs "all purchases of goods and services,

any extension of credit, and such other valuable consideration."[16]  It also states, "I/We acknowledge

receipt of Codale's Standard Terms and Conditions Applying to All Sales, and I/We have read,

understand, and accepts the terms stated therein."[17]  The Standard Terms and Conditions sheet states,

> Buyer agrees that any and all disputes with Seller, including not just
> contract but also tort claims, shall be resolved in the state or federal
> courts situated in Salt Lake County, Utah, and that these courts shall
> have the exclusive jurisdiction over all such disputes.
>
> Any legal action brought by Buyer against Seller shall be filed in one
> of the above referenced jurisdictions within one (1) year after the
> cause of action arises or it shall be deemed forever waived.[18]

The consideration for the credit agreement was an approved credit account.  Based on this language,

Codale contends all claims against it are barred because MP Nexlevel failed to file its complaint

within one-year after the causes of action arose.[19]

---

[14]  Declaration of Julie Ockler, ¶ 6 (Docket No. 36).

[15]  Credit Application (Docket No. 36, Ex. 2).

[16]  Credit Policy (Docket No. 36, Ex. 2).

[17]  *Id.*

[18]  Standard Terms & Conditions Applying to All Sales, ¶ Attorney's Fees, Jurisdiction, & Venue (Docket No. 36, Ex. 1).

[19]  MP Nexlevel has asserted causes of actions against Codale for breach of contract, breach of covenant of good faith and fair dealing, breach of express warranty, breach of warranty of merchantability, negligent misrepresentation, fraud, and unjust enrichment.  It also has asserted a

<u>**ANALYSIS**</u>

**I.    STANDARD FOR 12(b)(6) MOTION**

Among other grounds, Codale and Superior Essex, Inc. have moved to dismiss MP Nexlevel's complaint based on Rule 12(b)(6) of the *Federal Rules of Civil Procedure*.  The function of a 12(b)(6) motion is "to assess whether the plaintiff's *complaint alone* is legally sufficient to state a claim for which relief may be granted."[20]   "[A]ll well-pleaded facts, as distinguished from conclusory allegations, . . . must be viewed in the light most favorable to the non-moving party."[21]  The "complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face."[22]

On a Rule 12(b)(6) motion, a court does not "weigh potential evidence that the parties might present at trial."[23]  Consequently, a court does not look at evidence outside of a pleading to determine such motions.[24]  If a court does rely "on material from outside the pleadings, the court converts the

---

breach of warranty claim against Superior Essex, Inc. due to the alleged defective cable.

[20] *Dobsen v. Anderson*, No. 08-7018, 2008 U.S. App. LEXIS 22820, at *8 (10th Cir. Nov. 4, 2008) (quotations, citation, and alteration omitted) (italics in original); *see also* Fed. R. Civ. P. 12(b)(6).

[21] *Van Houten v. Marlett*, 330 Fed. Appx. 161, 162 (10th Cir. 2009) (citation omitted).

[22] *Phillips v. Bell*, No. 08-1420, 2010 U.S. App. LEXIS 2904, at *11–12 (10th Cir. Feb. 12, 2010) (quotations and citation omitted).

[23] *Dobsen*, 2008 U.S. App. LEXIS 22820, at *8.

[24] *Id.* at *8–9.

motion to dismiss into a motion for summary judgment."[25]  Here, both Codale and Superior Essex,

Inc. cite to evidence outside of the pleadings that is necessary for the court's review.  Because the

court must look at evidence outside of the pleadings to determine these motions, the motions must

be converted into motions for summary judgment.

"Summary judgment is appropriate if there is no genuine issue as to any material fact and the

moving party is entitled to judgment as a matter of law."[26]  The evidence and all reasonable

inferences are viewed "in the light most favorable to the party opposing summary judgment."[27]

## II.    CODALE'S MOTION

### A.    Pre-Contract Fraud

 MP Nexlevel asserts fraud as its Second Cause of Action against Codale.  Although fraud

may arise pre-contract or post-contract, Codale contends that MP Nexlevel cannot claim fraudulent

inducement to avoid the statute of limitations because (1) the credit application was submitted before

Codale provided its price quotes and (2) MP Nexlevel did not plead fraudulent inducement in its

complaint.

i.    Contract Formation

Although the Credit Policy states it applies to all purchases of goods, nowhere in the credit

---

[25]  *Id.* at *9 (quotations and citation omitted).

[26]  *Ellis v. State Farm Fire & Cas.* Co., 322 Fed. Appx. 594, 596 (10th Cir. 2009) (citing
*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); Fed. R. Civ. P. 56(c)).

[27]  *Davis-Travis v. State Farm Fire & Cas. Co.*, 336 Fed. Appx. 770, 772 (10th Cir. 2009)
(quotations and citation omitted).

agreement are the actual goods listed. Nor is the price for such goods listed. It is axiomatic that a contract for the sale of goods must specify both the goods and price by some determinable means.[28] Because neither term is specified in the credit agreement, the credit agreement alone cannot be a full expression of the parties' agreement that is at issue in this case. Indeed, Codale's Standard Terms and Conditions sheet states that "[e]ach shipment or delivery shall be deemed to have been sold under a separate and independent contract."[29] Thus, even though the credit agreement may have been approved, it did not constitute the complete and final contract between the parties as to the sale of goods now at issue.

*After* MP Nexlevel submitted its credit application and signed the Credit Policy, Codale sent the two quotes discussed above. Based on the quotes, MP Nexlevel then submitted a Purchase Order on September 30, 2005 that stated both the goods and pricing. The quotes were an offer by Codale which was accepted by MP Nexlevel when it submitted the Purchase Order. Only then did the parties have a binding contract, which included all of the material terms documented in a complete sales contract comprised of both the credit agreement and the Purchase Order. MP Nexlevel contends Codale's fraud was its misrepresentations that induced it to enter into the sales contract. Because no sales contract existed until MP Nexlevel submitted the Purchase Order, any actions taken and representations made by Codale to induce MP Nexlevel to enter into the agreement prior to the Purchase Order may support a claim for fraud. Such fraud, if proven to have induced MP Nexlevel

---

[28]  1-4 Joseph M. Perillo ed., *Corbin on Contracts*, §§ 4.3, 4.6 (Matthew Bender 2009).

[29]  Standard Terms & Conditions Applying to All Sales, ¶ Payment (Docket No. 36, Ex. 1).

to accept the offer, would result in the sales contract being voidable and all terms and conditions of the contract would be unenforceable, including the one-year statute-of-limitations provision.[30] Hence, if MP Nexlevel properly pled pre-contract fraud, upon which MP Nexlevel relied to accept Codale's offer (fraudulent inducement), that claim is not barred by the Standard Terms and Conditions sheet.

### ii.  Complaint

Among the eleven causes of action asserted by MP Nexlevel, none are entitled "fraud in the inducement." Rather, the complaint asserts claims for fraud and negligent misrepresentation. MP Nexlevel asserts that, upon information and belief, Codale contacted Yucca and Yucca agreed "to the substitution of OFS cable for Corning cable."[31] MP Nexlevel further asserts it did not approve of this contractual change, nor did Codale notify MP Nexlevel about the change.[32] Instead, Codale made the substitution and continued to charge MP Nexlevel for the Corning glass.[33] These allegations are all based on conduct that took place after the contract was formed and cannot, as a matter of law, support a claim for pre-contract fraud or fraud in the inducement. Instead, they assert fraud arising after the contract was formed.

MP Nexlevel also asserts, however, that "[t]he representation that Codale *would*, and was

---

[30]  *Invacare Corp. v. Sperry Corp.*, 612 F. Supp. 448, 451 (N.D. Ohio 1984) (stating a party cannot rely on a contract provision to bar a claim "when the claim alleges the contracts were induced through fraud") (citations omitted).

[31]  Amended Complaint, ¶ 19 (Docket No. 19).

[32]  *Id.*

[33]  *Id.*

supplying fiber optic cable made with Corning glass was made with the intent to induce MP Nexlevel to rely on the representation, and to deceive MP Nexlevel."[34]  The factual support for this allegation is apparently the assertion that "On or about August 29, 2005 and September 30, 2005, Codale represented to MP Nexlevel that it would provide fiber optic cable to the Project manufactured with Corning Glass."[35]  These representations were made pre-contract.  MP Nexlevel seeks damages as relief, but includes a prayer for punitive damages and "such other and further relief as the Court deems just and proper."  There is no express request to void the contract.  Although this pleading is at best inartful,[36] Codale and MP Nexlevel both submitted additional documents, which the court has considered.  Thus, the court must convert the 12(b)(6) motion into a motion for summary judgment.

Viewing the additional evidence in the light most favorable to MP Nexlevel, Codale quoted a price and identified the product by a part number.  MP Nexlevel used that information when it submitted its Purchase Order.  The invoice supplied by "Superior Essex" contains the same part number and price.  According to MP Nexlevel, this evidence shows that Codale never intended to provide cable with Corning glass because, upon information and belief, the part number

---

[34]  *Id.* ¶ 37 (emphasis added).

[35]  *Id.* ¶ 36. The evidence submitted in connection with the motions supports that the date of the representation was in fact September 22, 2005, but in either case the representation was made before the contract was complete.

[36]  These allegations imply inducement, but are not stated clearly.  Nevertheless, Codale has not moved to dismiss on the ground that MP Nexlevel fails to plead its claim with particularity under Federal Rule of Civil Procedure 9(b) and the court will not act in the absence of such a motion.

corresponded to OFS glass unbeknownst to MP Nexlevel. Whether this assertion is correct has not

been proven at this stage of the proceeding. The evidence is sufficient, however, to raise a disputed

issue of material fact regarding Codale's intent at the time of contracting. Hence, MP Nexlevel has

sufficiently alleged a claim for fraudulent inducement.

### iii.    Economic Loss Rule

Codale also argues that MP Nexlevel's fraud claim must be dismissed because it is barred

by the economic loss rule. "In Utah, the economic loss doctrine bars all tort claims that are not based

on a duty independent of any contractual obligations between the parties."[37]  One Utah Supreme

Court case stated this rule applies "no matter how intentional" the tort.[38]  Notably, however, that case

was interpreting Wyoming law.[39]  When interpreting Utah law, the Utah Supreme Court has recently

stated that at least some fraud claims "lie outside the scope of the economic loss rule."[40]  The

analysis to determine whether a claim is barred by the economic loss rule must begin with a

determination of whether the duty claimed to have been breached is imposed by law or arises from

---

[37] *Associated Diving & Marine Contractors, L.C. v. Granite Constr. Co.*, No. 2:01cv330, 2003 U.S. Dist. LEXIS 21560, at *12 (D. Utah July 10, 2003) (citations omitted).

[38] *Grynberg v. Questar Pipeline Co.*, 2003 UT 8, ¶ 43, 70 P.3d 1.

[39] *See id*. ¶ 40.

[40] *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing*, *LC*, 2009 UT 65, ¶ 38, 221 P.3d 234 (citing *Town of Alma v. Azco Constr., Inc.*, 10 P.3d 1256, 1263 (Colo. 2000)); *see also SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 2001 UT 54, ¶ 32 n.8, 29 P.3d 669 (stating "plaintiffs may recover purely economic losses in cases involving intentional torts such as fraud, business disparagement, and intentional interference with contract") (citation omitted).

the promises made by the parties to each other—a contract.[41]  If the duty is imposed by law, the

claimed breach may be pursued as a tort claim.[42]  But if the duty arises from contractual obligations

owed by the parties to each other, the claim must proceed in contract and tort claims are precluded.[43]

In this case, MP Nexlevel asserts fraud based at least in part on alleged misrepresentations

made before there was a binding contract between it and Codale.  The law, not the contract, imposed

a duty on Codale not to make material misrepresentations of fact.  Thus, MP Nexlevel's claims

arising from pre-contract misrepresentations are not barred by the economic loss rule, and MP

Nexlevel may proceed on this claim.

### B.    Post-Contract Fraud

MP Nexlevel further alleges misrepresentations made by Codale after the sales contract was

entered between MP Nexlevel and Codale.  MP Nexlevel assertion of these "fraud claims" is based

upon breaches of duties owed by Codale arising from its contractual obligations.  Such alleged

misrepresentations were made after the parties were bound by the rights and limitations imposed by

the sales contract.  One of these limitations is that *all* claims must be brought within the time

---

[41]  *Davencourt at Pilgrims Landing Homeowners Ass'n*, 2009 UT 65, ¶ 27 (indicating courts must determine whether a duty exists because of a contract or independent of the contract when conducting an economic loss analysis).  The Utah Supreme Court has "agreed with Colorado regarding the independent duty analysis," although it has not "adopt[ed] all of the independent duties recognized by Colorado." *Id.* ¶ 46.  Thus, such cases as *Town of Alma* and *Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, Nos. 07CA0987, 07CA0988 & 07CA 2342, 2009 Colo. App. LEXIS 715 (Colo. Ct. App. Apr. 30, 2009), also inform the court's analysis.

[42]  *Davencourt at Pilgrims Landing Homeowners Ass'n*, 2009 UT 65, ¶ 27; *Town of Alma*, 10 P.3d at 1262; *Hamon Contractors, Inc.*, 2009 Colo. App. LEXIS 715, at *15–16.

[43]  *Id.*

required by the one-year statute of limitations.[44]  This provision represents the parties' allocation of risks, by which the court is bound, and is broad enough to encompass fraud claims.

Codale began supplying the fiber optic cable to MP Nexlevel on October 3, 2005.  In the summer of 2006, MP Nexlevel experienced problems with the cable when it started splicing.  MP Nexlevel does not dispute that it learned in September 2006 that the cable was made with OFS glass rather than Corning glass.[45]  Nevertheless, it failed to file this lawsuit until March 14, 2008.  Because MP Nexlevel did not commence its suit within one year,[46] any fraud claim based upon misrepresentations or omissions made after the contract was entered into is barred by the contractual statute of limitations.

### C.     Negligent Misrepresentation

In its Third Cause of Action, MP Nexlevel asserts negligent misrepresentation as an alternative to its Second Cause of Action, alleging that "Codale represented to MP Nexlevel that it was supplying fiber optic cable made with Corning glass for the Project."[47]  MP Nexlevel further asserts that "Codale had no reasonable ground for believing that the representation that the fiber

---

[44]  *See* Standard Terms & Conditions Applying to All Sales, ¶ Attorney's Fees, Jurisdiction, & Venue (Docket No. 36, Ex. 1).

[45]  Affidavit of Robbi Pribyl, ¶ 9 (Dec. 10, 2008) (Docket No. 53).

[46]  MP Nexlevel offers no facts or argument that would relieve it of the requirement to file its claim within the one-year period.  MP Nexlevel also acknowledges that it knew of the alleged facts upon which it bases its claim more than a year before it filed its complaint.

[47]  Amended Complaint, ¶ 42 (Docket No. 19).

optic cable it was supplying was manufactured by Corning glass."[48]  The claim does not allege that the negligent misrepresentation induced MP Nexlevel to enter into the sales contract, but does incorporate by reference the preceding paragraphs.

The incorporated factual allegations include the misrepresentations alleged to have been made pre-contract.  To the extent that MP Nexlevel's claim for negligent misrepresentation is based upon a claimed breach of duty imposed by law, pre-contract, the same analysis applies that was applied to the fraud claim.  The claim for negligent misrepresentation based upon statements made pre-contract is not barred either by the economic loss rule or the contractual statute of limitations. The claim is barred as to any statement or omission made after the date the sales contract was entered.

### D.   Unjust Enrichment

MP Nexlevel has asserted as its Fourth Cause of Action a claim for unjust enrichment.  "[A] prerequisite for recovery on an unjust enrichment theory is the absence of an enforceable contract;" the theory "presupposes that no enforceable written or oral contract exists."[49]  Here, the status of the contract is unknown presently.  It may be voidable if MP Nexlevel proves fraudulent inducement. If MP Nexlevel cannot prove fraudulent inducement, then the contract is enforceable.  Because the contract's status is unknown, the court denies summary judgment on MP Nexlevel's unjust enrichment claim.

---

[48]   *Id.*

[49]   *Ashby v. Ashby*, 2010 UT 7, ¶ 14, 649 Utah Adv. Rep. 39 (quotations and citations omitted).

### E.    Breach of Contract

If MP Nexlevel proves it was fraudulently induced, either intentionally or negligently, to enter into the sales contract, the contract is void if MP Nexlevel repudiates it.  In that case, the contract claims would become moot because there would be no contract.  If MP Nexlevel ratifies the contract or if it does not prove it was fraudulently induced to enter into the sales contract, then the sales contract is applicable.  When "one elects to continue with the contract, one accepts all the burdens contained in the contract as well as the benefits."[50]  The contracted for statute of limitations was one year.  Even applying the discovery rule, MP Nexlevel did not file its contract claim within one year of discovery.  Consequently, MP Nexlevel's breach of contract claim is barred by the contractual statute of limitations.  Because MP Nexlevel's breach of contract claim cannot proceed even if it were to ratify the contract, the claim must be dismissed.

### F.    Breach of Covenant of Good Faith and Fair Dealing

"The covenant of good faith and fair dealing cannot 'establish new, independent rights or duties not agreed upon by the parties.'"[51]  "The covenant . . . is read into contracts in order to protect the express covenants or promises of the contract."[52]  A claim for breach of the implied covenant of good faith is a contract claim and does not alter the terms of a contract, nor does it exist absent a

---

[50]  *TBG, Inc. v. Bendis*, 841 F. Supp. 1538, 1567 (D. Kan. 1993) (quotations, citation, and alteration omitted).

[51]  *David Early Groups, Inc. v. BFS Retail & Commercial Operations, LLC*, No. 2:06cv277, 2008 U.S. Dist. LEXIS 5694, at *27 (D. Utah Jan. 25, 2008) (quoting *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 55 (Utah 1991)).

[52]  *Id.* (quotation and citation omitted).

contract. Accordingly, the court must dismiss this cause of action on the same basis that it dismissed MP Nexlevel's breach of contract claim.

### G. Breach of Warranty of Merchantability and Express Warranty

As a claim for breach of warranty of merchantability, MP Nexlevel alleges that "Codale warranted that the cable supplied would pass without objection in the trade under the **contract description**."[53] It further alleges that Codale supplied nonconforming goods in breach of that warranty. As a claim for breach of express warranty, MP Nexlevel alleges that "Codale warranted that the cable supplied would contain Corning brand glass," but it "supplied nonconforming goods in breach of that warranty."[54] MP Nexlevel's breach of warranty claims are, as is evident in the quoted language, premised upon the existence of a contract for the sale of goods. MP Nexlevel has made no argument to the contrary. Because these claims depend upon the existence of the sales contract and its terms, they also are barred by the contractual statute of limitations.[55]

## II. SUPERIOR ESSEX, INC.'S MOTION

### A. Incorrect Party

Superior Essex, Inc. contends that MP Nexlevel's claim against it must be dismissed because MP Nexlevel sued the wrong entity. Superior Essex, Inc. is the parent company. Superior Essex

---

[53] Amended Complaint, ¶ 48 (Docket No. 19) (emphasis added).

[54] *Id.* ¶¶ 52–53.

[55] Moreover, the Standard Terms and Conditions contain an express disclaimer, in capital letters, about a warranty of merchantability. *See* Standard Terms & Conditions Applying to All Sales, ¶ Warranties (Docket No. 36, Ex. 1).

Communications LP is a wholly owned subsidiary that purportedly manufactured the cable and contracted with Codale. Superior Essex, Inc. provided an affidavit from the Vice President of Sales to support these facts.[56]

In response, MP Nexlevel contends it is less than clear who the proper party is. The parent company and subsidiary are located at the same address, with the same telephone number. Often the companies represent themselves simply as Superior Essex, without making a distinction. The product and warranty brochure that MP Nexlevel obtained before entering the sales contract with Codale only said "Superior Essex," and it referred buyers to the "www.superioressex.com" website.[57] An e-mail communication between MP Nexlevel and an employee of "Superior Essex" listed the employee's e-mail address as "...@spsx.com," and the name of the company as "Superior Essex."[58] When MP Nexlevel entered a settlement agreement with "Superior Essex" over the poor performance of another cable, the agreement was on the letterhead of "Superior Essex."[59] The invoice to Codale for the relevant cable said to remit payment to Superior Essex Communications but the invoice's letterhead referred only to "Superior Essex," and the customer service contact number listed the generic number that is shared by Superior Essex, Inc. and Superior Essex

---

[56] Declaration of Brad R. Johnson, ¶ 4 (Docket No. 48, Ex. 1) (hereinafter "Johnson Declaration").

[57] *See* Affidavit of Robbi Pribyl (Jan. 5, 2009) (Docket No. 64, Ex. 3 & Ex. A thereto).

[58] E-mail from Tim West to Wayne Putman (Apr. 17, 2008) (Docket No. 64, Ex. 1, Attachment A).

[59] Settlement Letter (Feb. 12, 2008) (Docket No. 64, Ex. 1, Attachment B).

Communications.[60]    Moreover, while Superior Essex, Inc. contends only Superior Essex

Communications manufactured and sold the cable, a sales person at OFS Fitel, LLC declared that

she provided price quotes to Superior Essex, Inc. for the OFS optical fiber and that it was Superior

Essex, Inc. who purchased the optical fiber.[61]

Based on these facts, it is difficult to distinguish Superior Essex, Inc. from Superior Essex

Communications.[62]  Consequently, it is unclear whether one or both entities are a proper party to this

transaction.  Superior Essex Communications has agreed to accept service of process if the court

does not dismiss the complaint.  It is evident, therefore, that Superior Essex Communications has

notice of this lawsuit.  Because it is not clear at this point whether one or both entities should be

parties to the lawsuit, the court denies dismissal and grants leave to amend the complaint to add

Superior Essex Communications or to substitute it as a party.

**B.    Personal Jurisdiction**

i.    Standard for Rule 12(b)(2) Motion

Superior Essex, Inc. also has moved to dismiss MP Nexlevel's complaint based on Rule

12(b)(2) of the *Federal Rules of Civil Procedure*.  "[T]he plaintiff bears the burden of establishing

---

[60]  *See* Superior Essex Invoices (Docket No. 48, Ex. 1, Attachments thereto).

[61]  Declaration of Dianne Langone, ¶¶ 3–4 (Nov. 21, 2008) (Docket No. 51, Ex. 1).

[62]   This statement does not address the corporate veil between Superior Essex, Inc. and Superior Essex Communications.  Rather, it merely addresses the lack of clarity about who the actors were in the relevant transaction.

a prima facie case of jurisdiction."[63] "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits."[64] If facts are disputed, "[a]ll factual disputes regarding jurisdiction are resolved in favor of the plaintiff."[65]

     ii.    Due Process

Superior Essex, Inc. contends MP Nexlevel's claim against it must be dismissed because the court lacks personal jurisdiction. Because this is a diversity action, the "plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."[66] Under Utah law,

> (1) the defendant's acts or contacts must implicate Utah under the Utah long-arm statute; (2) a "nexus" must exist between the plaintiff's claims and the defendant's acts or contacts; and (3) application of the Utah long-arm statute must satisfy the requirement of federal due process.[67]

Although this is a three-part inquiry, the Utah long-arm statute specifies "that courts 'should assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution.'"[68] Thus, the focus of the inquiry is

---

[63] *Riddle & Assocs., P.C. v. Morcos*, 2:06cv972, 2007 U.S. Dist. LEXIS 97148, at *5 (D. Utah June 12, 2007).

[64] *Id.* (quotations and citations omitted).

[65] *Id.*

[66] *Greer v. Safeway*, 317 Fed. Appx. 838, 840 (10th Cir. 2009) (quotations, citation, and emphasis omitted).

[67] *Id.* at 840–41 (quotations and citation omitted).

[68] *Id.* at 841 (quoting Utah Code Ann. § 78B-3-201(3) (2008)).

upon whether "suit in Utah comports with due process."[69]

The due process analysis for specific jurisdiction involves two steps. First, a court "must determine whether sufficient minimum contacts exist between the defendant and the forum state."[70] Minimum contacts "may be established where the defendant has 'purposefully directed' its activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum."[71] Second, a court must determine "whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice."[72] Because Superior Essex Communications has agreed to accept service of process, the court also addresses personal jurisdiction regarding it to avoid an additional motion to dismiss on this issue.

Codale is located in Utah. Codale contacted Superior Essex in Georgia for the supply of cable. It is unclear from the facts whether Codale's contact involved only Superior Essex Communications or Superior Essex, Inc. as well. Although the cable was not sent to Codale in Utah, Superior Essex Communications does ship cable and other products into Utah.

Superior Essex Communication's global sales are about $678 million annually.[73] Its Utah

---

[69] *Id.*

[70] *Id.* (citations omitted).

[71] *Id*. (quotations and citations omitted).

[72] *Id.* (quotations and citations omitted).

[73] Johnson Declaration, ¶ 9 (Docket No. 48, Ex. 1).

sales were $1.5 million in 2005, and $1.8 million in both 2006 and 2007.[74] These figures are only for products actually shipped into Utah.[75] They do not account for products ordered by Utah distributors, such as Codale, but shipped to another state.

Additionally, Superior Essex's Director of Public Market Sales and the Regional Sales Manager of the Southwest Region visit Utah once annually.[76] The District Sales Manager for the Western Region visits Utah quarterly.[77] Superior Essex, Inc. asserts all of these individuals are Superior Essex Communications employees.[78] Again, however, the Superior Essex web-site merely lists them as being with the "Superior Essex" company.[79]

Further, the website lists the "Utah Contact" names and telephone numbers for Utah customers to call regarding communications cable.[80] It also has a list of "Utah Distributors," and "Utah Certified Contractors."[81] Moreover, a job announcement posted by "Superior Essex" for its "Sales/Marketing" Department listed Utah as one of its sales territories, and required that persons

---

[74] *Id.*

[75] *See id.*

[76] *Id.* ¶ 6.

[77] *Id.*

[78] *Id.*

[79] *See*, *e.g.*, Utah Contacts web-page (Dec. 19, 2008) (Docket No. 64, Ex. 2, Attachment B).

[80] *Id.*

[81] Utah Distributors web-page (Dec. 19, 2008) (Docket No. 64, Ex. 2, Attachment C); Utah Certified Contractors web-page (Jan. 5, 2009) Docket No. 65, Ex. 2, Attachment D).

applying for the position have knowledge of fiber cabling.[82]  Again, no distinction was made between Superior Essex, Inc. and Superior Essex Communications.  Finally, the Utah Rural Telcom Association ("URTA") lists "Superior Essex" as one of its Associate Members.[83]  The URTA website states its "members are committed to providing rural Utah with the best telecommunications services available."[84]

These facts show that Superior Essex Communications has purposefully availed itself of the Utah market for communications cable.  Additionally, the court concludes the underlying action is related to Superior Essex Communications' contacts with the forum.  Moreover, exercising jurisdiction does not offend traditional notions of fair play and substantial justice.  The burden on Superior Essex Communications to appear in Utah is not substantial in comparison to MP Nexlevel's interest in avoiding piecemeal litigation to resolve this dispute.  Utah also has an interest in resolving this dispute based on the degree of business that Superior Essex Communications transacts in Utah.  Additionally, avoiding piecemeal litigation promotes efficiency in the interstate judicial system.  For these reasons, the court concludes that exercising specific jurisdiction over Superior Essex Communications is appropriate in this matter.

The facts also show that "Superior Essex" is purposefully availing itself of the Utah market for communications cable, but it is unclear who "Superior Essex" is.  "Companies conducting

---

[82]  Job Announcement (Dec. 16, 2008) (Docket No. 64, Ex. 2, Attachment E).

[83]  URTA web-page (Docket No. 64, Ex. 2, Attachment H).

[84]  *Id.*

business through their subsidiaries can qualify as transacting business in a state, provided the parent exercises sufficient control over the subsidiary."[85]  The lack of distinction between Superior Essex, Inc. and Superior Essex Communications in its location, contacts, e-mails, letterhead, web-site, brochures, and job announcements supports that the two companies constitute "Superior Essex." It also tends to support that Superior Essex, Inc. is exercising sufficient control over Superior Essex Communications to qualify as doing business in Utah.  The court nevertheless chooses to reserve ruling on whether it has personal jurisdiction over Superior Essex, Inc until after MP Nexlevel has conducted limited discovery on this issue.

### C.    Express Warranty Claim

MP Nexlevel asserts it obtained Superior Essex's[86] product brochure before it purchased the cable from Codale, and that the product brochure represented the quality of the cable.[87]  When Superior Essex sold the cable to Codale, the invoice contract with Codale also contained express warranties.  The language in the product brochure is the same language contained in the contract. MP Nexlevel asserts "as a subsequent distributee of the subject cable, [it] is entitled to the benefits

---

[85]  *Pro Axess, Inc. v. Orlux Distrib.*, 428 F.3d 1270, 1278 (10th Cir. 2005).

[86]  The court does not distinguish between Superior Essex, Inc. and Superior Essex Communications in this portion of its decision because the issue pertains to whether MP Nexlevel may maintain an express warranty claim.  Because the focus is on the purported warranty and MP Nexlevel, rather than on who issued the warranty, the court need not decide at this stage of the litigation whether Superior Essex, Inc., Superior Essex Communications, or both issued the purported warranty.

[87]  Amended Complaint, ¶ 12 (Docket No. 19); Affidavit of Robbi Pribyl (Jan. 5, 2009) (Docket No. 64, Ex. 1 & Ex. A thereto).

of this express warranty as a third-party beneficiary of the contract between Superior and Codale, by an implied assignment that runs with the subject goods, *or by operation of law.*"[88]  The invoice contract between Superior Essex and Codale states to ship the product to MP Nexlevel.  MP Nexlevel was therefore a known entity to Superior Essex.  Nevertheless, Superior Essex contends MP Nexlevel cannot maintain a breach of express warranty claim against it because there is no privity between them.[89]

Under the contract between Superior Essex and Codale, Indiana law applies.[90]  The Uniform Commercial Code ("UCC") for Indiana addresses express warranties between a buyer and a seller.[91] In the Official Comments, it states that "the warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such contract."[92]  It acknowledges that warranties have been extended to third-party beneficiaries in a consumer, product-liability situation.[93] In then states:  "Beyond that, the matter is left to the case law with the intention that the policies of

---

[88]  Amended Complaint, ¶ 80 (Docket No. 19) (emphasis added).

[89]  MP Nexlevel only asserts breach of express warranty.  "Indiana has adhered to the general rule that *implied* warranties" for economic loss "cannot ordinarily be sustained between the buyer and a remote manufacturer."  *Prairie Prod., Inc. v. Agchem Division-Pennwalt Corp.*, 514 N.E.2d 1299, 1301 (Ind. Ct. App. 1987) (emphasis added).

[90]  Superior Essex's Standard Terms & Conditions, ¶ 1 (Docket No. 48, Ex. 1, Attachment A).

[91]  Burns Ind. Code Ann. § 26-1-2-313 (2009).

[92]  *Id.*, cmt. 2.

[93]  *Id.*

this Act may offer useful guidance in dealing with further cases as they arise."[94]  Thus, the Indiana UCC does not specify that express warranties are limited only to a buyer and a seller in a commercial context.

Indiana case law supports that a "cause of action for breach of express warranties against a manufacturer not in privity" with a buyer may be maintained.[95]  The Indiana court noted that "the authority in favor of discarding the privity requirement in express warranty cases is overwhelming."[96]  In the *Prairie Production* case, a manufacturer of pesticide advertised that its product effectively killed corn earworms.[97]  It did so through "sample labels, brochures, and written advertisements appearing in trade magazines."[98]  Similar methods of advertisement are present in cases from other jurisdictions.  When manufacturers "extol the merits and quality of their products" in advertisements that are "directed to each purchaser in the chain of distribution," the affirmations may constitute an express warranty.[99]  "The question whether advertising literature contains affirmations of fact constituting express warranties is a jury question."[100]

In this case, MP Nexlevel asserts that "[p]rior to purchasing fiber optic cable from Codale,

---

[94] *Id.*

[95] *Prairie Prod., Inc.*, 514 N.E.2d at 1302.

[96] *Id.*

[97] *Id.* at 1300.

[98] *Id.*

[99] *Id.* at 1302.

[100] *Id.* at 1303 (citation omitted).

MP Nexlevel received Superior's product brochures representing the quality of cable that Codale would provide."[101]  Whether Superior Essex's brochures are sufficient to constitute an express warranty is a material fact in dispute.  Accordingly, Superior Essex is not entitled to summary judgment on this basis.  To prove this claim, however, MP Nexlevel will not only have to prove the product brochure constituted an express warranty, but also that it was "part of the basis of the bargain" when it decided to submit a Purchase Order to Codale.[102]

## ORDER

For the reasons stated above, the court GRANTS IN PART and DENIES IN PART Codale's Motion to Dismiss or Alternatively for Summary Judgment.[103]  The court dismisses all of MP Nexlevel's claims against Codale, except for the claims for fraud based upon pre-contract conduct, negligent misrepresentation based upon pre-contract conduct, and unjust enrichment.  The court DENIES IN PART and RESERVES RULING IN PART Superior Essex, Inc.'s motion to dismiss.[104] The court denies dismissal of the breach of warranty claim.  The court grants leave for MP Nexlevel to conduct limited discovery on whether Superior Essex, Inc. exerts sufficient control over Superior Essex Communications that it can be said Superior Essex, Inc. transacts business in Utah.  The court also grants leave for MP Nexlevel to amend its complaint to add Superior Essex Communications or to substitute it as the proper party based on its discovery.

---

[101]  Amended Complaint, ¶ 12 (Docket No. 19).

[102]  *Prairie Prod., Inc.*, 514 N.E.2d at 1304.

[103]  Docket No. 39.

[104]  Docket No. 47.

DATED this 23ᵈ day of April, 2010.

BY THE COURT:

_____
Clark Waddoups
United States District Judge